UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

        v.                                          **MEMORANDUM & ORDER**
                                                    20-CR-428 (WFK)
MELQUAN THAWNEY,

                        Defendant.
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:** On June 2, 2021, Melquan Thawney ("Defendant") pleaded guilty to a single-count Indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 51 months of incarceration, 2 years of supervised release with special conditions, and a $100.00 special assessment.

## BACKGROUND

On October 8, 2020, a grand jury returned a single-count Indictment charging Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On June 2, 2021, Defendant pleaded guilty to the sole count of the Indictment.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. §

3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, No. 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

**II. Analysis**

**A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

  i. History and Characteristics of the Defendant

Defendant was born Melquan Starvon Thawney on July 18, 1993, in Brooklyn, New York. Presentence Investigation Report ("PSR") ¶ 34, ECF No. 21. His mother, Monique Lane, resides in Brooklyn and is unemployed. *Id.* After battling ovarian cancer for the past year and a half, Defendant's mother is now cancer free. *Id.* She describes Defendant as "outgoing, friendly, and smart" and states she tried to move Defendant to Florida in 2009 so that he could obtain a better education and be placed in a better environment. *Id.* ¶ 38. His father, Reginald Thawney, also resides in Brooklyn and works in retail. *Id.* ¶ 34. Defendant reports his father spent most of Defendant's childhood incarcerated, beginning when Defendant was 5 years old, until he was between 11 and 12 years old. *Id.* ¶ 36. According to Defendant, he was saddened by his father's absence because his father was his role model. *Id.* Defendant states he is close

2

with both his parents, and they are aware of his involvement in the instant offense and remain supportive of him. *Id.* ¶¶ 34, 36.

Defendant has two maternal half-siblings: Laquana Lane and Laquan Lane. *Id.* ¶ 35. He shares a close relationship with both half-siblings and states they are aware of Defendant's involvement in the instant offense and remain supportive of him. *Id.* Defendant states he also has several paternal half-siblings. *Id.*

Defendant was reared in a lower-income household in Brooklyn. *Id.* He was raised by his mother and paternal grandmother and says his basic needs were met and he had a happy childhood. *Id.* ¶¶ 36-37. However, Defendant states it was difficult to watch his mother struggle raising her children with minimal financial support and reported he did not grow up in "the best" neighborhood. *Id.* ¶ 37. Notably, Defendant reported there were several murders in his community and that an individual who he looked up to died due to gun violence when Defendant was 13 years old. *Id.* Defendant also lost two close friends when he was 17 years old. PSR Addendum at 1, ECF No. 23.

Defendant does not have any children. *Id.* ¶ 39. He reported being in a romantic relationship with a woman that he has known since childhood. *Id.* Defendant's partner remains aware of his involvement in the instant offense and remains supportive of him. *Id.*

For much of his life, Defendant has lived in Brooklyn, New York. *Id.* ¶ 41. In 2009, Defendant briefly moved to Florida with his maternal grandmother, but returned to Brooklyn the same year and lived with his mother until 2015. *Id.* From 2015 to 2020, Defendant lived with his paternal grandmother in Brooklyn. *Id.* From 2020 to the instant arrest, Defendant resided with his partner. *Id.* Defendant plans to live with his cousin in Virginia upon his release from custody. PSR Addendum at 1.

3

### ii. Physical, Mental, and Emotional Health

Defendant reported no current serious health conditions. *Id.* ¶ 43. In 2012, Defendant states he was hit by a vehicle and treated at a hospital in Brooklyn, New York, but left the next day because he did not have any injuries. *Id.* Defendant attended physical therapy for back pain in Brooklyn, New York. *Id.*

Defendant was previously incarcerated at Rikers Island Correctional Facility in Queens, New York. *Id.* ¶ 45. During this time, Defendant was observed talking to himself and throwing his feces. *Id.* He was transferred to Bellevue Hospital as a result. *Id.* Defendant states his time at Rikers Island was depressing due to his isolation and says he talked to the walls to cope. *Id.* Defendant reports his time at the MDC was similarly depressing and caused him to have anxiety. *Id.* ¶ 46. He states he has spoken with a mental health specialist at the MDC. *Id.* ¶ 47.

Defendant reported he previously had a gambling issue but stopped after incurring an arrest for gambling. *Id.* ¶ 48.

### iii. Substance Abuse

Defendant has a history of using marijuana, which he first used when he was 15 years old. *Id.* ¶ 50. At one point, Defendant indicated he smoked 10 marijuana cigarettes per day, but he last smoked marijuana in 2015 after serving a state sentence. *Id.*

Defendant attended a mandatory drug treatment program, which he entered because his mother asked his probation officer to "mandate" Defendant to attend the program to get him away from his neighborhood. *Id.* ¶ 51. Defendant completed the program in 2011. *Id.*

### iv. Educational, Vocational, and Special Skills

In 2009, Defendant's mother sent him to Florida to live with a family member to get him away from the violence in his neighborhood. *Id.* ¶ 52. While in Florida, Defendant attended

Miramar High School in Fort Lauderdale, where he participated in sports. *Id.* He eventually returned to New York and obtained his High School Equivalency Diploma on April 11, 2019 while serving a 2018 state sentence for a separate offense. *Id.* ¶ 53. While in state custody, Defendant reported receiving vocational training. *Id.* ¶ 54. He advised he has applied to an international Christian College and hopes to become a pastor. *Id.* ¶ 55.

     v.   <u>Employment Record</u>

Prior to the instant arrest, Defendant reported that he was employed at Gangstas Making Astronomical Community Changes (GMACC) Inc., an organization which supports formerly incarcerated individuals transitioning to life in the community. *Id.* ¶ 56. While with GMACC, Defendant provided teen mentoring through open discussions, community engagement, and transitional support. *Id.* In 2020, Defendant worked for Jimmy Jazz Sneakers Store in Brooklyn, New York. *Id.* ¶ 57.

     vi.   <u>Criminal History</u>

Defendant has been convicted of numerous crimes. On January 5, 2011, Defendant was sentenced to 6 months in custody and 5 years of probation for Criminal Possession of a Weapon in the Second Degree: Loaded Firearm – Other than a Person's Home or Business, a Class C Felony, following an incident in which NYPD officers observed him handing a firearm to another individual. *Id.* ¶ 23. For this offense, Defendant was resentenced to 6 months in custody on January 26, 2011. *Id.*

On January 26, 2012, Defendant was sentenced to 42 months in custody and 5 years of post-release supervision following his conviction for Robbery in the Second Degree: Aided by Another, a Class C Felony. *Id.* ¶ 24. This conviction arose from an incident in which Defendant and a co-defendant displayed a gun to force a victim to hand over his wallet. *Id.*

5

Between November 1, 2010 and December 20, 2012, Defendant, acting in concert with several other individuals, agreed to commit murder, assault in the first degree, and criminal possession of a weapon in the second degree. *Id.* ¶ 25. For this conduct, Defendant was convicted of Conspiracy in the Third Degree, a Class D Felony, and sentenced to 2 to 6 years in custody on April 8, 2014. *Id.*

On March 8, 2018, Defendant was sentenced to 5 years in custody and 5 years' post-release supervision for Attempted Criminal Possession of a Weapon in the Second Degree: Loaded Firearm – Other than a Person's Home or Business, a Class D Felony, after he was involved in a shooting. *Id.* ¶ 26. Specifically, after a drive-by shooting that took place on October 9, 2015, NYPD officers found Defendant with a loaded firearm in the back seat of the car involved in the shooting. *Id.* He was eventually released and on parole supervision when he was arrested for the instant offense. *Id.*

    vii.    <u>Adjustment to Incarceration</u>

While in custody at the MDC, Defendant received an infraction on November 14, 2020 for disruptive conduct. *Id.* ¶ 40.

    viii.    <u>Nature and Circumstances of the Offense</u>

On September 13, 2020, while patrolling the Brownsville neighborhood of Brooklyn, New York, New York Police Department ("NYPD") officers received a call over the radio regarding an individual possessing a firearm. *Id.* ¶ 3. The officers made their way to the location reported by the radio dispatcher and observed Defendant and several men inside of a nearby restaurant, who matched the physical description reported by the 911 caller. *Id.* ¶ 4. The officers observed Defendant with his right hand inside the front pocket of his sweatshirt and directed him to remove his hand several times. *Id.* ¶ 5. After he refused to do so, the officers

forcibly removed his hand from his pocket, searched his sweatshirt, and recovered a loaded .32 caliber Davis Industries Derringer Pistol, bearing serial number 404101. *Id.*

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity, promote respect for the law, and to deter others from similar illicit conduct.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The maximum term of imprisonment for this offense is 10 years. 18 U.S.C. §§ 922(g)(1), 924(a)(2). By statute, Defendant also faces a maximum supervised release term of not more than three years and a term of probation of not less than one nor more than five years. 18 U.S.C. §§ 3583(b)(2); 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 U.S.C. § 3563(a)(2). In addition, the maximum fine is $250,000.00, *see* 18 U.S.C. § 3571(b), and a special assessment of $100.00 is mandatory, 18 U.S.C. § 3013. Finally, as part of his Plea

7

Agreement, the Defendant consented to the forfeiture of the firearm and ammunition involved in the instant offense.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" USSG § 3553(a)(4)(A).

Under USSG § 2K2.1, the base offense level for Defendant's offense is twenty (20) because Defendant sustained at least one felony conviction of either a crime of violence or a controlled substance offense prior to engaging in the instant offense. *See id.* §§ 4B1.2(a), 2K2.1(a)(4)(A). Specifically, Defendant was previously convicted of Robbery in the Second Degree for which he was sentenced to 42 months in custody and 5 years of post-release supervision on January 26, 2012, which is a "crime of violence as defined in USSG § 4B1.2(a). Because Defendant demonstrated acceptance of responsibility for the instant offense, the offense level is decreased by two (2) points. *Id.* § 3E1.1(a). Finally, because the Government was notified in a timely manner of Defendant's intention to plead guilty, the offense level is decreased by one (1). *Id.* § 3E1.1(b). This results in a total offense level of seventeen (17).

Both Probation and the Government agree Defendant has a criminal history category of V. For a total offense level of seventeen (17) and a criminal history category of V, the Guidelines imprisonment range is forty-six (46) to fifty-seven (57) months of incarceration, to which defense counsel agrees. The Guidelines further suggest a term of supervised release of one (1) to three (3) years, *see* USSG § 5D1.2(a)(2), and a fine of between $10,000.00 and $95,000.00. USSG § 5E1.2(c)(3).

Probation recommends a sentence of fifty-one (51) months of incarceration, two (2) years of supervised release with special conditions, and a $100.00 special assessment. Probation Mem. at 1, ECF No. 21-1. While Probation acknowledges the Defendant may have had a difficult life, Probation urges the Court to impose a sentence that takes into account Defendant's pattern of dangerous conduct and disregard for the law. *Id.* at 2.

The Government requests a sentence that is "appropriately serious" and proportional to Defendant's offense, which it notes is Defendant's third arrest for weapons possession to date. Gov. Mem. at 3, ECF No. 29.

Defense counsel urges the Court to impose a sentence of time served and urges the Court to impose a downward variance to account for the harsh conditions in which Defendant was incarcerated while in the MDC. Def. Mem. at 5-6, ECF No. 28.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). This factor is not relevant here.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

9

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to address "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). Restitution is not applicable to this case. *See* 18 U.S.C. § 3663.

## CONCLUSION

A sentence of 51 months of incarceration, 2 years of supervised release with special conditions, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and any addenda thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 14, 2022
      Brooklyn, New York